**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 16-49-DLB-CJS**

**DOLORES JANE BODEN, et al.**                                        **PLAINTIFFS**

**v.**                              **MEMORANDUM OPINION AND ORDER**

**ST. ELIZABETH MEDICAL CENTER, INC., et al.**                  **DEFENDANTS**

**\*\*  \*\*  \*\*  \*\*  \*\***

This matter is before the Court on two motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The first Motion asks the Court to dismiss certain individuals (the "Former Committee Members") from this case.  (Doc. # 77).  The second Motion asks the Court to dismiss Defendants' Counterclaim for Declaratory Judgment.  (Doc. # 81).  For the reasons stated herein, the Court will **grant in part** and **deny in part** the Former Committee Members' Motion to Dismiss (Doc. # 77), and **grant** the Plaintiffs' Motion to Dismiss Defendants' Counterclaim (Doc. # 81).

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Defendant St. Elizabeth Medical Center, Inc. ("St. Elizabeth") is a non-profit hospital system headquartered in Edgewood, Kenton County, Kentucky, that provides primary and advanced care physicians to Northern Kentucky, Ohio, and Indiana.  (Doc. # 74).  St. Elizabeth sponsors the St. Elizabeth Medical Center Employees' Pension Plan (the "Plan"), which is an "'employee pension benefit plan' within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35)."  *Id.* at 1, 5-7.  The Plan's named fiduciary is St. Elizabeth Medical Center Employees' Pension Plan Administrative Committee (the "Committee").

*Id.* at 5. Plaintiffs allege that the Committee is comprised entirely of members of the St. Elizabeth board of trustees (the "Board"), who are named as individual defendants[1] in this action. *Id.* Certain individual defendants—the Former Committee Members[2]—ended their tenure on the Committee before the filing of the Amended Complaint. *Id.* at 5-6.

According to Plaintiffs Dolores Boden, Jeanine Godsey, and Patricia Schaeffer, St. Elizabeth "established the Plan in 1966" to provide for its employees' retirement income. *Id.* at 10. These Plaintiffs are "current and former employees of [St. Elizabeth.]" *Id.*

On March 17, 2016, Plaintiffs filed this putative class action against Defendants. (Doc. # 1). Approximately one year into the litigation, the Court stayed this action pending a decision from the United States Supreme Court regarding ERISA's exemption for church plans. *See Advocate Health Care Network v. Stapleton*, 137 S.Ct. 1652 (2017). Following the Supreme Court's decision, and with the permission of the Court (Doc. # 73), Plaintiffs filed an Amended Complaint on August 1, 2017. (Doc. # 74).

Plaintiffs' Amended Complaint alleges that the Defendants have violated their duties as fiduciaries or sponsors of the Plan. (Doc. # 74 at 17-20). Specifically, Plaintiffs have alleged seven counts against Defendants. Count One seeks a declaration that the Plan is not a church plan and is pled against all Defendants. *Id.* at 20. Counts Two (violation of reporting and disclosure obligations), Five (breach of fiduciary obligations under ERISA), and Six (breach of fiduciary obligations under state law) are pled against

---

[1] The following individuals were named as defendants in their fiduciary capacities as members of the Board and the Committee: Martin Oscadal, Marianne Tait, Robert Prichard, Robert Tracy, Patrick Burns, Bruno Giacomuzzi, Lori Baldwin-Ritchey, Gary Blank, Garren Colvin, Randall Foltz, Nathan Van Laningham, Chris Carle, Glenn Loomis, Daniel Rutterer, and Sarah Giolando.

[2] The following individuals named as defendants had ceased to be members of the Board or Committee by the date that the Amended Complaint was filed: Garren Colvin, Randall Foltz, Nathan Van Laningham, Chris Carle, Glenn Loomis, Daniel Rutterer, and Sarah Giolando.

all Defendants as fiduciaries of the Plan.  *Id*. at. 21-27.  Counts Three (failure to provide minimum funding), Four (failure to establish the Plan through a written instrument), and Seven (breach of contract) are pled against St. Elizabeth.  *Id*. at 23-28.  Plaintiffs bring these claims under ERISA § 502(a)(3),[3] 502(a)(1)(A), and 502(a)(2).

In their Prayer for Relief, Plaintiffs request the following: (1) certification of this action as a class action; (2) a declaration that the Plan is an employee-benefit plan, a defined benefit pension plan subject to ERISA, and is not an ERISA-exempt church plan; (3) an order requiring Defendants to bring the Plan into compliance with ERISA; (4) an order requiring Defendants to make the Plan whole for past contributions that should have been made pursuant to ERISA, to pay interest and investment income on these payments, and to disgorge any profits accumulated as a result of the fiduciary breaches; (5) an order granting a preliminary and permanent injunction removing Defendants from the Committee and appointing independent fiduciaries in their place; (6) an order requiring Defendants to pay $110 per day to each Plaintiff and Class Member for failing to send them a funding notice; (7) declaratory and injunctive relief to enjoin Defendants from further violating ERISA; (8) any other equitable or monetary relief the Court deems appropriate under ERISA § 502(a); (9) an order requiring St. Elizabeth to fund the Plan in accordance with the Plan Document; (10) an award of attorneys' fees and expenses; and (11) any other relief the Court determines is just and proper.  *Id*. at 28-29.

---

[3]     Courts and ERISA practitioners generally refer to the section in the original ERISA title, as opposed to the United States Code Section.  Thus, 29 U.S.C. § 1132 is referred to as ERISA § 502, 29 U.S.C. §§ 1102, 1104, and 1109 are referred to as ERISA §§ 402, 404, and 409, 29 U.S.C. §§ 1021-24 are referred to as ERISA §§ 101-104, and 29 U.S.C. § 1082 is referred to as ERISA § 302.  *See, e.g., Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985).

Alongside their Answer, Defendants filed a Counterclaim for Declaratory Judgment, asking the Court to declare that the Plan is a "church plan" within the definition found in ERISA § 3(33), and is therefore exempt from ERISA's requirements. (Doc. # 76). The Former Committee Members then filed a Motion to Dismiss them from the case under Rule 12(b)(6). (Doc. # 77). Plaintiffs having responded (Doc. # 80), and the Former Committee Members having replied (Doc. # 83), the Former Committee Members' Motion is ripe for the Court's review.

While responding to the Former Committee Members Motion to Dismiss, Plaintiffs also filed Motion to Dismiss Defendants' Counterclaim. (Doc. # 81). Defendants having responded (Doc. # 84), Plaintiffs having replied (Doc. # 85), and Defendants having surreplied (Doc. # 88), this Motion is also ripe for the Court's review.

## II.    ANALYSIS

### A.    Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is met when the facts in the complaint allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not contain "detailed factual allegations," but must contain more than mere "labels and conclusions." *Id.* Put another way, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a motion to dismiss under Rule 12(b)(6), the court must "accept[ ] all factual allegations [in the Amended Complaint] as true and draw[ ] all reasonable

inferences in favor of the plaintiff." *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007) (citing *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994)).

**B.     Defendants' Motion to Dismiss is granted in part and denied in part.**

Unfortunately, the Former Committee Members' Motion to Dismiss is not a model of clarity.  (Doc. # 77-1).  In addition, it suffers from a serious procedural flaw.

A motion to dismiss under Rule 12(b)(6) is untimely if made after the moving party has made a responsive pleading.  *McGlone v. Bell*, 681 F.3d 718, 728 n.2 (6th Cir. 2012). The Former Committee Members' Motion (Doc. # 77) was filed after the Answer filed by all Defendants (Doc. # 76), thereby rendering the Motion untimely.   However, Rule 12(h)(2)(B) allows a party to bring a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(c), which may be raised "[a]fter the pleadings are closed."   The Court will therefore construe the Former Committee Members' Rule 12(b)(6) motion as a Rule 12(c) motion, noting that the standard of review is the same. *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008).

### 1.     *Counts One, Three, Four, and Seven.*

Providing no legal support and little persuasive argument, the Former Committee Members request that this Court dismiss Count One—which seeks equitable and declaratory relief under ERISA and 28 U.S.C. § 2201, *et seq.*, the Declaratory Judgment Act.  (Doc. # 77-1 at 2) (stating only that their "actions or inactions have no bearing on church plan status."). The Former Committee Members buttress their argument in their Reply, suggesting that any liability they might have if the Court were to declare the Plan a church plan would be under specific statutes, "which are separate stand-alone claims for relief."  (Doc. # 83 at 8).  Plaintiffs' argument in opposition to dismissing Count One is

equally unsupported by legal citation or analysis. (Doc. # 80). According to Plaintiffs, their request for "redress" will include "redressing violations that took place while [the former Committee Members] were on the Committee, such as the failure to send proper Plan disclosures." *Id.* at 3. Accepting the allegations in the Amended Complaint as true, and drawing all reasonable inferences in Plaintiffs' favor, the Court declines to find that this Count should be dismissed.

The Declaratory Judgment Act permits a court to "declare the rights and other legal relations" of parties to a controversy. Plaintiffs have alleged that the Plan is not a church plan and therefore subject to ERISA's requirements. (Doc. # 74 at 11-17). Plaintiffs have additionally pled this action against the Defendants as fiduciaries of the Plan. *Id.* at 1. Because, under ERISA, fiduciaries can be "personally liable to make good" on a plan "any losses to the plan resulting from [the fiduciaries'] breach," ERISA § 409, common sense and logic dictate that a declaration by the Court as to whether the Plan is a church plan will necessarily involve the rights and legal relations of Plaintiffs as against the Former Committee Members. If the Plan is determined to not be a church plan, then accepting the allegations in the Amended Complaint as true and drawing all reasonable inferences in Plaintiffs favor, the Former Committee Members may be liable for breaches of their fiduciary duties. Accordingly, the Former Committee Members' Motion to Dismiss Count One is **denied.**

Turning to the other Counts, the Former Committee Members argument for dismissal of Counts Three, Four, and Seven is also unsupported by legal citation or discussion. (Doc. # 77-1 at 2) ("Along these same lines, claims Three, Four, and Seven do not involve these Defendants, or any Committee members, and are aimed by Plaintiffs

solely at St. Elizabeth."). Plaintiffs are even more succinct in their argument on these Counts. (Doc. # 80 at 4) ("Movants seek their dismissal by simply arguing Plaintiffs' claims do not pertain to them. This argument should be rejected outright.") (internal citations omitted).

The Former Committee Members are correct that they are not named as defendants in Counts Three, Four, and Seven, and Plaintiff has therefore failed to state a claim against them for these Counts. (Doc. # 74 at 23-24, 27-28). *See, e.g., Kimes v. S. Health Partners,* No. 4:16-cv-129-JHM, 2017 WL 374482 (W.D. Ky. Jan. 25, 2017) (allowing the plaintiff to file an amended complaint, but holding that "[i]f Plaintiff fails to amend his complaint to name these individuals as Defendants in their individual capacities, then these claims will also be dismissed for failure to state a claim upon which relief may be granted."); *see, e.g., Andreson v. Diorio, et al.*, 349 F.3d 8, 17-18 (1st Cir. 2003) (affirming the lower court's dismissal of Diorio from a defamation claim when Diorio was not named as a defendant in the defamation count in the complaint). Accordingly, the Former Committee Members Motion to dismiss Counts Three, Four, and Seven will be **granted**.

### 2. *The ERISA Inadequate Funding Claim*

Under ERISA, Congress set up a program that "governs employee benefit plans and establishes both the obligations of plan fiduciaries and the remedies for any breach of those duties." *Tullis v. UMB Bank, N.A.*, 515 F.3d 673, 676 (6th Cir. 2008). ERISA allows a civil action to be brought by "the Secretary [of Labor], or by a participant, beneficiary, or fiduciary for appropriate relief under section 409 (29 U.S.C. § 1109)" for breach of a fiduciary's duty. *Id.* at 676-77 (citing 29 U.S.C. § 1132(a)(2)). In Count Five,

Plaintiffs allege that Defendants breached their fiduciary duties by failing to "create and enforce adequate funding policies," leading to a loss to the Plan "equal to the foregone funding and earnings thereon." (Doc. # 74 at 25-26).

The Former Committee Members argue that Plaintiffs' ERISA breach-of-fiduciary-duty claim should be dismissed because Plaintiffs do not have standing to bring such a claim, as they have sustained no injury-in-fact, but instead allege only "contingent and speculative" injury. (Doc. # 77-1 at 3-6). The Former Committee Members argue that Plaintiffs do not allege that St. Elizabeth has "failed to pay any required plan benefits to Plaintiffs," and that they "have no liability under ERISA" for "speculative risk of loss." *Id.* at 3-5. In summary, the Former Committee Members argue that "[t]he possible risk of an unknown and unascertainable loss of benefits cannot support" an ERISA breach-of-fiduciary-duty claim." *Id.* at 6. Plaintiffs contend that they do have standing, for the simple reason that the underfunding of the Plan creates a "substantial risk" of harm. (Doc. # 80 at 23).

Traditionally, courts reviewed the question of whether a plaintiff had standing through two inquiries: statutory and constitutional. *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 580 (6th Cir. 2016). Statutory standing has since been clarified as "not a standing issue," but simply a question of whether the plaintiff "has a cause of action under the statute." *Id.* at 581 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014)). The Former Committee Members do not argue that Plaintiffs lack statutory standing for Count Five.

Even when Plaintiffs have satisfied their statutory standing under ERISA, they must still establish constitutional standing. *Loren v. Blue Cross & Blue Shield of Mich.*,

505 F.3d 598, 606-07 (6th Cir. 2007). It is Plaintiffs' burden to establish standing. *Id.* at 607 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Thus, to proceed, Plaintiffs must show that they: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 136 S. Ct 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560-61). To show an "injury-in-fact," plaintiffs must prove that the injury is both particularized and concrete, and "actual or imminent, not conjectural or hypothetical". *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "Particularization" requires that the injury "affect the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). The injury must also be "concrete," meaning that it must actually exist, though not necessarily in a tangible state. *Id.* at 1548-49. The allegation of a "bare procedural violation, divorced from any concrete harm" will not satisfy the "concrete" requirement of standing; however, the "risk of real harm" may "satisfy the requirement of concreteness." *Id.* at 1549.

The Sixth Circuit has had recent opportunity to consider a suit brought under ERISA within the context of the Supreme Court's clarifications on standing in *Spokeo*. *Soehnlen,* 844 F.3d 576. In this case, the plaintiffs had brought claims for monetary and injunctive relief under ERISA §§ 502(a)(1)(b), 502(a)(3), and claims for breach of fiduciary duty under ERISA § 502(a)(2), 502(a)(3), and 409. *Id.* at 580-85. The *Soehnlen* Court declined to accept the plaintiff's argument that "merely alleging a violation of ERISA rights" satisfied "their obligation [to prove standing]." *Id.* at 582; *see also id.* at 585 ("[I]t is not sufficient merely to state, as Plaintiffs do, that the plan is deficient without showing which specific fiduciary duty or specific right owned to them was infringed."). Thus,

although an alleged injury can be sufficiently particularized through "Congress' role in identifying and elevating intangible harms," plaintiffs are still required to show a "risk of real harm." *Id.* (quoting *Spokeo*, 136 S. Ct at 1548). The *Soehnlen* Court held that the plaintiffs had failed to establish standing in their suit under ERISA § 502(a)(1)(B)[4] because they had not shown "precisely what concrete harm they suffer[ed] as a result of Defendants' violations of their ERISA rights." *Id.* The Court also clarified that a plaintiff cannot simply allege "that the plan is deficient without showing which specific fiduciary duty was infringed" or fail to show "actual or imminent injury to the Plan itself." *Id.* at 585. While recognizing that "misconduct by the administrators of a benefit plan can create an injury if 'it creates or enhances a risk of default by the entire plan,'" the court found that plaintiffs did not have standing because they were not able to show actual or imminent injury in their allegations that the plan was exposed to prospective liability. *Id.* (citing *LaRue v. DeWolff, Boberg & Assoc., Inc.*, 552 U.S. 248, 255 (2008)).

However, and most relevant to the case at bar, the *Soehnlen* Court contrasted the standing requirements for an action brought under ERISA §§ 502(a)(1)(B) and 502(a)(3)[5] with one brought under ERISA § 502(a)(2). *Soehnlen*, 844 F.3d at 584 (quoting *Loren*, 505 F.3d at 608) ("to the extent we have allowed cases to go forward without compelling plaintiffs to show individualized injury, the cases were … [brought] under [ERISA § 502] for breach of fiduciary duty [in order to] 'seek recovery on behalf of the plan.'" *Id.* (quoting

---

[4]  29 U.S.C. § 1132(a)(1)(B) allows participants and beneficiaries of an ERISA plan to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

[5]  29 U.S.C. § 1132(a)(3) permits a participant, beneficiary, or fiduciary of an ERISA plan to bring a civil suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

*Loren*, 505 F.3d at 608). The *Loren* Court had confirmed that plaintiffs could bring suits alleging breach of fiduciary duty under ERISA § 502 (a)(2) "*on behalf* of their respective plans, but they are not permitted to *recover* individually, as all relief must go to the benefit of the ERISA plans themselves." *Loren*, 505 F.3d at 608. In addition, although bringing a suit derivatively on behalf of a plan, such a plaintiff must still satisfy the requirements of constitutional standing. *Id.* at 609. In sum, when bringing an action to recover on behalf of a plan under ERISA § 502(a)(2), a plaintiff with statutory standing must also show constitutional standing, but need not show individualized injury.

In arguing against Plaintiffs' standing, the Former Committee Members rely heavily on *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523 (5th Cir. 2016), where the Fifth Circuit held that the named plaintiff lacked standing to assert a claim under ERISA § 502(a)(2) because he had not alleged "an injury in fact sufficient to support constitutional standing" by alleging "injury against [his] individual[ ] benefit payments, rather than injury to the plan as a whole." *Lee,* F.3d 523 at 544-45. In addition to finding that "the alleged fiduciary misconduct is … too attenuated to suffice as direct injury to [the plaintiff]," the Fifth Circuit also rejected the argument that the named plaintiff had standing to assert the claim on behalf of the plan as an assignee or relator. *Id.* at 547 (discussing *Sprint Commc'ns Co. L.P. v. APCC Servcs., Inc.*, 554 U.S. 269 (2008) and *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000)).

But *Lee* is neither binding nor persuasive to this Court. The Sixth Circuit has distinctly stated that it does not require plaintiffs suing under ERISA § 502(a)(2) to establish individualized injury to seek recovery on behalf of a plan. *Soehnlen*, 844 F.3d at 584. And although standing requires the allegation of an "actual or imminent injury"

and the "real risk of harm," *Spokeo*, 136 S.Ct. at 1549, the Fifth Circuit effectively eliminates the "imminent" and "risk" aspects of standing, requiring instead "actual injury" and "real harm." *Lee*, 837 F.3d at 545 (finding that the risk to a plaintiff bringing a fiduciary misconduct action under ERISA for a defined-benefit plan is "attenuated … prior to default under the plan.").

Furthermore, the Fifth's Circuit interpretation is unworkable for breach-of-fiduciary-duty claims. Under this interpretation, no claim for a violation of ERISA § 409 could ever be brought by a participant or beneficiary on behalf of a defined-benefit plan under ERISA § 502(a)(2). It is undisputed that the only entity that can recover under a suit brought pursuant to ERISA § 502(a)(2) is the Plan itself. *See Loren*, 505 F.3d at 608. Thus, generally speaking, only the Plan would be able to allege an injury, traceable to conduct of a defendant, "that is likely to redressed by a favorable judicial decision." *Spokeo,* 136 S. Ct at 1547. But ERISA § 502(a)(2) does not give the Plan statutory standing to sue on its own behalf, instead giving that right to participants, beneficiaries, fiduciaries, and the Secretary of Labor, none of whom can be individually redressed by a favorable judicial decision. 29 U.S.C. § 1132(a)(2). Furthermore, what individualized injury could the Secretary of Labor[6] allege, or a fiduciary who has no interest in the Plan? Standing, as an underlying necessity for subject-matter jurisdiction, is a yes/no proposition, not one of degrees. *See, e.g., Brown v. BlueCross BlueShield of Tenn., Inc.*, 827 F.3d 543 (6th Cir. 2016) (affirming lower court's dismissal for lack of subject-matter jurisdiction after finding

---

[6]     Although jurisdiction would exist in this district for a suit by the Secretary of Labor under 28 U.S.C. § 1345, standing might still be problematic, especially under Defendants' analysis. *See, e.g., Marshall v. Gibson's Products, Inc. of Plano*, 584 F.2d 668, 676 n.10 (5th Cir. 1978) ("In light of s 1345, the United States needs no additional grant of subject-matter jurisdiction to sue in the district courts. Jurisdiction exists because the United States is a party. Of course, the United States must satisfy traditional conditions to bringing suit in federal court, such as standing to litigate.") (internal citations omitted).

that appellants lacked standing). Thus, the Fifth Circuit's requirement of an actual individualized injury in a suit brought under ERISA § 502(a)(2) would render ERISA § 502(a)(2)'s remedy meaningless. In addition to being illogical and unworkable, this interpretation is not in line with the Sixth Circuit's approach to suits under ERISA § 502(a)(2) and will not be followed by this Court.

The question before the Court, therefore, is whether Plaintiffs have pled facts sufficient to establish standing to sue pursuant to ERISA § 502(a)(2) for alleged breach of fiduciary duties under ERISA § 409. The Court finds that Plaintiffs have pled sufficient facts here.

First, the Court must determine whether Plaintiffs have requested the appropriate relief. In a claim for relief under ERISA § 502(a)(2), "an alleged breach of fiduciary must result in a loss to the plan." *Wolf v. Causley Trucking, Inc.*, No. 17-1683, 2017 WL 6371262, at *7 (6th Cir. Dec. 13, 2017). Because Plaintiffs in this case seek to recover money on the alleged "loss to the Plan equal to the foregone funding and earnings thereon," (Doc. # 74 at 26), the Court finds that they seek monetary relief. By alleging a financial loss to the Plan premised on its underfunding, Plaintiffs' have sufficiently shown that they seek the appropriate remedy under ERISA § 502(a)(2), monetary relief.

Accepting the allegations in the Amended Complaint as true and drawing all reasonable inferences in favor of Plaintiffs', the Court finds that Plaintiffs have alleged sufficiently concrete and particularized injuries to establish standing in this case. Plaintiffs have alleged that as of December 2016, the Plan was only funded to 66.5% of funds necessary "to pay participants their expected benefits." (Doc. # 74 at 2). Just one year

before, it had only been 58% funded.[7]  *Id.*  Plaintiffs allege that, as the Plan is a defined-benefit plan, if St. Elizabeth "does not make adequate financial contributions to the Plan there will not be enough money to pay participants the retirement income that St. Elizabeth Healthcare promises."  *Id.*  Plaintiffs further allege that the Former Committee Members, as fiduciaries, failed:

> to perform their delegated task to "establish and carry out a funding policy consistent with the purposes of the Plan and the requirements of applicable law," and by acquiescing in the funding policy established by [St. Elizabeth], the Committee Defendants acted in the interests of [St. Elizabeth] rather than acting solely in the interests of the Plan participants as is required of a fiduciary under ERISA and the Plan.

*Id.* at 20.  This has "resulted in a loss to the Plan equal to the foregone funding and earnings thereon, and this failure has profited St. Elizabeth by providing it the use for its general business purposes of money that it should have paid to the Plan."  *Id.* at 25-26.

Plaintiffs further allege that they have "suffered harm as a result of Defendants' breaches of fiduciary duties."  *Id.* at 27.  According to Plaintiffs, "[they] face a substantial risk of their pensions being lost or severely reduced … as the Plan Document gives St. Elizabeth the power to terminate the Plan at any time."  *Id.*  Plaintiffs seek to recover the monetary loss.  *Id.* at 26.

Plaintiffs have alleged that a significantly underfunded pension plan has created the imminent risk of loss of benefits to the participants.  *See LaRue*, 552 U.S. 248 at 255 (noting that it was the creation or enhancement of "default risk that prompted Congress

---

[7]     Much of Defendants' Reply is spent attempting to disprove the allegation that the Plan was underfunded, arguing that the Plan's funding must be considered in the context of non-GAAP accounting practices and the permitted amortization rates.  But the Court is required to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (citation omitted).  Therefore, the Former Committee Members' arguments as to the accuracy of Plaintiffs' claims are left to a later stage of this litigation.

to require defined benefit plans … to satisfy complex minimum funding requirements."). These allegations sufficiently support the inference that the actual risk of default has been enhanced. *Soehnlen*, 844 F.3d at 585; s*ee also Tullis*, 515 F.3d at 681 (creating the direct correlation between recovery on behalf of a plan where the value has been "diminished because of the defendant's actions"). Accordingly, Plaintiffs have sufficiently alleged standing for Count Five, and the Former Committee Members' Motion to Dismiss this Count is **denied**.

### 3.     *Other ERISA Claims*

Count Two alleges that the Defendants violated their annual reporting obligations under ERISA § 103 and their notification and funding-notice obligations under ERISA §§. 101(d)(1) and (f). (Doc. # 74 at 21-22). The Former Committee Members seek dismissal of Count Two, asserting two arguments in support of their Motion.[8]

First, the Former Committee Members argue that St. Elizabeth must be the plan sponsor because the "plan does not identify a specific person as the administrator," and under the language of ERISA § 3(16), if no person is specifically designated the Plan administrator, the plan sponsor becomes the administrator. (Doc. # 77-1 at 6). Thus, the Former Committee Members argue that the "statutory obligations" in ERISA §§ 102(f) and 103 are not directed at the Former Committee Members. *Id.* Plaintiffs' response points to the Plan Document, which states that "[t]he Committee shall be the plan administrator and named fiduciary of the Plan." (Doc. # 80 at 7). The Former Committee Members alter their argument in their Reply, admitting that the Plan names the Committee as

---

[8]     Under this same section in Defendants' Motion, Defendants step away from the alleged violations in Count Two and begin to argue about who has obligations under ERISA § 402 (Obligation to establish and maintain a plan pursuant to a written instrument). But this falls under Plaintiffs' Count Four, which the Court has already dismissed as against the Former Committee Members.

administrator, but then arguing that the Committee could not be the administrator because it is not a "specific person" under ERISA § 3(16)(A).  (Doc. # 83 at 7).

Under ERISA, a "person" is defined as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."  29 U.S.C. § 1002(9).  Accepting as true the facts alleged in the Amended Complaint and drawing all reasonable inferences in favor of Plaintiffs, the Court finds that the Committee falls within the definition of "person" in  ERISA § 3(9).  To hold otherwise would be to divest the Committee—named as the Plan administrator—of any fiduciary responsibility under ERISA § 3(21)(A), which holds that "a *person* is a fiduciary with respect to a plan to the extent … he has any discretionary authority or discretionary responsibility in the administration of the plan." (emphasis added).  Such a reading is untenable.

The Former Committee Members' second argument for dismissal of Count Two is that the claims are not proper because the Committee is not even named as a Defendant in this action.  (Doc. # 77-1 at 6-7).  According to the Former Committee Members, Plaintiffs removed the Committee as a Defendant in this action following the Supreme Court's decision in *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652.  (Doc. # 83 at 7).  The Former Committee Members argue that this has placed Plaintiffs in the unwinnable position of having to argue that either the non-named Committee was required to provide the notices, rendering the entire claim deficient for failure to name the correct party, or that St. Elizabeth itself was required to provide the notices, eliminating any action against the Former Committee Members under Count Two.  *Id.*  However, this argument is irrelevant, as the Court is considering here only whether Count Two lies

against the Former Committee Members.

Under ERISA § 502(a)(1), participants and beneficiaries can bring an action to enforce ERISA § 502(c), which permits the Court to find the administrator "personally liable to such participant or beneficiary [for] up to $100 a day from the date of" certain enumerated failures. Among the sources of enumerated failures is ERISA § 101(f), which requires the administrator of a defined benefit plan to provide a funding notice to each plan participant and beneficiary. Plaintiffs' Count Two alleges such liability attaches to "All Defendants as Fiduciaries of the Plan." (Doc. # 74 at 21-22).

It is difficult to understand how Plaintiffs' allegation against "All Defendants as Fiduciaries of the Plan" will lie on a claim where the allegation is that the administrator did not fulfill what are, effectively, purely ministerial functions under ERISA § 101(f). Under ERSIA § 409, "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries … shall be personally liable to make good to such plan any losses to the plan from each such breach." Thus, where a person breaches a fiduciary duty, that person is liable to the plan for losses to the plan. *Bridges v. Am. Elec. Power Co., Inc.*, 498 F.3d 442, 444 (6th Cir. 2007). In contrast, an administrator's failure to meet the obligations of ERISA § 101(f) results in that administrator's personal liability of up to $100 per day for each participant and beneficiary. 29 U.S.C. § 1132(c)(1). Accordingly, there is no "loss" to a plan resulting from an administrator's failure to issue notices under ERISA § 101(f), placing the administrator's potential liability outside of the administrator's role as a fiduciary. Although Plaintiffs might argue that the Former Committee Members are individually liable as members of the Committee—the Plan Administrator—this liability would not be the result

of a fiduciary duty. *See, e.g., Moore v. Metro. Life Ins. Co.*, No. 5:17-cv-105-DCR, 2018 WL 1187770 (Mar. 7, 2018) (distinguishing the plan administrator's fiduciary duties from its statutory duties by denying plaintiff's fiduciary claims while granting statutory penalties for failure to provide plaintiff with the applicable certificate governing his benefits claim within the thirty days required under ERISA § 502(c)).

Plaintiffs' other allegation in Count Two is that the administrator has failed to file an annual report of the Plan with the Secretary of Labor, in derogation of its obligations under ERISA § 104(a). Plaintiff brings this allegation under ERISA § 502(a)(3), which gives participants, beneficiaries, and fiduciaries the authority to bring an action to enjoin an act that violates ERISA, or to obtain "other equitable relief" through redress or enforcement of ERISA. Again, Plaintiffs allege that this ERISA § 502(a)(3) claim for injunctive relief must be brought against "All Defendants as Fiduciaries of the Plan." (Doc. # 74 at 21-22).

However, the relief Plaintiffs seek is not available to them. Even assuming *arguendo* that the Former Committee Members *are* appropriately named here as former members of the Committee, which had been designated the Plan administrator, the Former Committee Members are simply unable to provide the relief requested—namely, for the current administrator to file the Plan's annual reports with the Secretary of Labor.[9] Thus, no action against the Former Committee Members under ERISA § 104(a) can lie. *See, e.g., Schmalz v. Village of N. Riverside*, No. 13-cv-8012, 2015 WL 1598110, at *4 (N.D. Ill. Apr. 8, 2015) ("As [plaintiff] concedes, [the two defendants] are no longer

---

[9]     "[T]he text of ERISA leaves no doubt that Congress intended equitable relief to include only those types of relief that were typically available in equity, such as injunction, mandamus, and restitution." *Mertens v. Hewett Assocs.*, 508 U.S. 248, 248 (1993).

trustees.  They have no ability, much less a duty, to promote [plaintiff], and, therefore, cannot be ordered to do so … Accordingly, [the two defendants] are also dismissed with respect to Count III.").

Accordingly, because Plaintiffs have pled Count Two against the Former Committee Members in their fiduciary capacities only, and because the Former Committee Members are no longer able to provide the equitable relief Plaintiffs seek in Count Two, the Former Committee Members' Motion to Dismiss Count Two is **granted**.

### 4. *Common Law Breach of Fiduciary Duty Claims*

The final section of the Former Committee Members' Motion re-argues Plaintiffs' standing to pursue Counts Six and Seven, this time under Kentucky law.  (Doc. # 77-1 at 7-8).  Because the Court has previously determined that Plaintiffs have failed to state a claim against the Former Committee Members for Count Seven, and Plaintiffs have agreed that Count Six should be dismissed, this argument will be dismissed as moot.

### C. Plaintiffs' Motion to Dismiss Defendants' Counterclaim is Granted.

Under the Declaratory Judgment Act (the "Act"), "any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration..."  28 U.S.C. § 2201(a).  It is left to the Court's discretion whether to entertain an action under the Declaratory Judgment Act.  *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995).  To aid in this determination, the Sixth Circuit has laid out five factors ("the *Grand Trunk* factors") for courts to consider: (1) whether the judgment would settle the controversy; (2) whether the action would serve a useful purpose by clarifying the legal relations at issue; (3) whether the remedy requested under the Act is simply being used for "procedural fencing"; (4) whether such an action would add tension between federal

and state courts and improperly encroach upon state jurisdiction; and (5) whether there exists a remedy outside of the Act that is better or more effective. *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000) (citing *Grand Truck W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984); *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 447-48 (6th Cir.1991); *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 277 (6th Cir.1990)).

In considering these factors, the Sixth Circuit has encouraged district courts to consider three broader principles: efficiency, fairness, and federalism. *W. World Ins. Co. v. Hoey*, 773, F.3d 755, 759 (6th Cir. 2014). The Sixth Circuit has "never assigned weights to the *Grand Trunk* factors when considered in the abstract," and has urged that the "relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *Id.* (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008); *Sherwin–Williams Co. v. Holmes Cty.*, 343 F.3d 383, 390–91 (5th Cir. 2003)). "A district court will typically examine the general principles—whether a declaratory judgment will 'serve a useful purpose' and if it will 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Malibu Media, LLC v. Ricupero*, 705 F. App'x. 402, 405 (6th Cir. 2017) (quoting *Grand Trunk*, 746 F.2d at 326) (finding also that courts have "evaluated whether such a 'useful purpose' exists by looking specifically at the issue of redundancy."). With these principles in mind, the Court turns to Plaintiffs' Motion to Dismiss the Defendants' Counterclaim for Declaratory Judgment.

Plaintiffs have moved to dismiss Defendants' Counterclaim under Rule 12(b)(6), alleging that Defendants have failed to state a claim upon which relief can be granted.

(Doc. # 81), and that even if Defendants have stated a claim, that the Court should decline to exercise jurisdiction over the Counterclaim.[10] The Court starts with the latter of these—Plaintiffs' argument that the Court should decline to exercise jurisdiction over the Counterclaim, as it is redundant to Plaintiffs' Amended Complaint, and therefore "not useful." (Doc. # 82 at 8-10). This argument is based on the "mirror-image rule," which can be summarized as follows:

> A counterclaim for a declaratory judgment that arises out of a transaction or occurrence other than the one that forms the basis of plaintiff's claim for relief, or presents issues totally unrelated to the main claim, generally poses no special procedural problems. *When the request for declaratory relief brings into question issues that already have been presented in plaintiff's complaint and defendant's answer to the original claim, however, a party might challenge the counterclaim on the ground that it is redundant and the court should exercise its discretion to dismiss it.* This would be true if defendant is adequately protected in terms of the ability to have the issues that are raised by the request for declaratory relief fully adjudicated.

§ 1406 Counterclaims and Crossclaims for Declaratory Judgment, 6 Fed. Prac. & Proc. Civ. § 1406 (3d ed.) (internal citations omitted) (emphasis added). The Sixth Circuit has applied the "mirror-image rule" in a narrow range of cases.

In *Dominion Elec. Mfg. Co. v. Edwin L. Wiegand Co.*, 126 F.2d 172 (6th Cir. 1942), the plaintiff brought suit for alleged infringement of a registered trademark. In response, the defendant filed a counterclaim seeking a declaration that the trademark was "invalid or restricted, and not infringed[,] that an unfair and improper use had been made of it, injuring its business[,] and pray[ing] that a determination be had which should adjudicate

---

[10]     The Court recognizes that the Declaratory Judgment Act does not confer subject-matter jurisdiction, and thus, the "first and foremost question" the Court must ask is whether it has jurisdiction to review an action. *Valinksi v. Detroit Edison*, 197 F. App'x 403, 405 (6th Cir. 2006) (quoting *Douglass v. E.G. Baldwin & Assocs. Inc.*, 150 F.3d 604, 606-07 (6th Cir. 1998)). ERISA is an act promulgated by the United States Congress. *Tullis,* 515 F.3d at 676. The Court therefore has federal-question jurisdiction under 28 U.S.C. § 1331 over the ERISA claims, and supplemental jurisdiction over the state-law claims, pursuant to 28 U.S.C. § 1367.

all of the rights and relations of the parties to the actual controversy." *Dominion Elec*, 126 F.2d at 173. The lower court dismissed the declaratory judgment counterclaim, and the declaratory judgment plaintiff appealed. *Id.* Drawing on its experience with patent-infringement suits, the Sixth Circuit determined that even where the counterclaim asserts a matter "otherwise available as a defense under denials and affirmative defenses," thereby possibly rendering it "superfluous," the counterclaim might be available to a defendant to obviate the concern that "dismissal of a plaintiff's bill does not always adjudicate every aspect of the controversy or give the defendant all the relief to which he may be entitled." *Id.* at 174. The Sixth Circuit further opined that it saw "no reason [the Act] should not be available to [a defendant] as a counterclaim when circumstances would have permitted a separate suit. Avoidance of multiplicity of actions is also a desideratum." *Id.* at 175.

In *Fed. Deposit Ins. Corp. v. Project Dev. Corp.*, 819 F.2d 289 (6th Cir. 1987) (table), the Sixth Circuit reviewed a party's appeal of the trial court's denial of the party's motion to amend to add a counterclaim and cross claim, and imposition of Rule 11 attorneys' fees for what was deemed a "meritless and frivolous" cross claim. *Project Dev. Corp.*, 819 F.2d at *2. In discussing the counterclaim, the appellate court suggested two broad propositions of law related to counterclaims: (1) "because the counterclaim stated issues identical to the issues raised in the complaint, and the complaint was properly dismissed for lack of actual controversy, the counterclaim should also have been dismissed for the same jurisdictional defect"; and (2) "when a counterclaim merely restates the issues as a 'mirror image' to the complaint, the counterclaim serves no purpose." *Id.* at *3.

More recently, the Sixth Circuit addressed the mirror-image rule within the context of copyright law. *Malibu Media, LLC v. Ricupero*, 705 F. App'x. 402. In *Ricupero*, the Sixth Circuit affirmed the lower court's dismissal of a counterclaim because it was redundant to the plaintiff's copyright-infringement suit and thus failed to state a claim upon which relief could be granted under Rule 12(b)(6). *Ricupero*, 705 F. App'x at 405. The plaintiff's suit alleged that the defendant had downloaded, copied, and distributed twenty-six movies copyrighted by plaintiff. In response, the defendant filed a counterclaim seeking "declaratory judgment that he was not a copyright infringer." *Id*. at 404. After the trial court accepted plaintiff's voluntary dismissal under Rule 41(a)(2) and dismissed defendant's counterclaim, the defendant appealed. *Id*. at 405. The Sixth Circuit, relying on *Project. Dev. Corp.*, 819 F.2d 289 and two unpublished district court decisions, also found that because the trial court's dismissal was under Rule 12(b)(6), the trial court had not needed to "assess its discretion to exercise jurisdiction over the declaratory judgment action under the Grand Trunk factors." *Id*. at 406 (citing *Grand Trunk*, 746 F.2d 323).

Instead, the *Ricupero* Court looked to see whether "resolution of [the plaintiff's] copyright-infringement claim would dispose of all factual or legal issues necessary for deciding [the defendant's] counterclaim." *Id*. The Court found this to be the case: the plaintiff had alleged copyright infringement claims against the defendant, the defendant's counterclaim allegations aligned with the allegations made by the plaintiff, and the "heart of [the defendant's] counterclaim [was] whether he infringed the copyrighted works." *Id*. As a result, the appellate court affirmed the trial court's dismissal of the counterclaim as "redundant," or a "mirror image" of the plaintiff's complaint. *Id*. at 406-07.

Count One of Plaintiff's Amended Complaint seeks "declaratory relief that the Plan is not a 'church plan' within the meaning of ERISA § 3(33)." (Doc. # 74 at 20). Defendants' Counterclaim is the mirror-image of Count One, seeking "a declaration from this Court that its pension benefits plan which is the subject of the Amended Complaint (the 'Plan') is a 'church plan' under ERISA § 3(33)." (Doc. # 76 at 5). In addition, Defendants' second affirmative defense is that the Plan "is a "church plan" under ERISA." *Id.* at 1.

Defendants contest the characterization of their Counterclaim, arguing that the key legal and factual issues necessary for the Court to determine whether the Plan is a church plan are set out in the Counterclaim, and not in the Amended Complaint. (Doc. # 84 at 2). Defendants also argue that the Counterclaim details the administrative duties of the Committee, the Committee Members' religious affiliation, and contains an allegation that the Internal Revenue Service previously recognized the Plan as a church plan, none of which are appropriately raised and discussed in the Amended Complaint. *Id.* at 2-4. In other words, Defendants would argue that the mirror-image rule refers to the identity of factual and legal *allegations*, not identity of factual and legal *issues*. But this is not the law. The fact that Defendants present counter-arguments to Plaintiffs' arguments is not surprising, but it does not prevent the Court from applying the mirror-image rule. Resolution of Plaintiffs' Amended Complaint for declaratory relief will resolve the Defendants' Counterclaim, as both seek a declaration form this Court on whether the Plan is a church plan. The legal and factual issues attendant to this question will be the same, regardless of who is seeking the declaration.

Turning to whether to exercise discretion over the Counterclaim, the Court notes that the Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wycoff Co., Inc.*, 344 U.S. at 241.  In addition, the *Grand Trunk* factors do not need to be equally weighted; instead, courts are to give each factor its relative weight based upon the "underlying considerations of efficiency, fairness, and federalism."  *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).  However, following the approach suggested in *Ricupero*, 705 F. App'x 402, the Court would not need to consider the Grand Trunk factors.  Instead, having determined that the Counterclaim is redundant to the Amended Complaint, the Court would be permitted to simply grant the Rule 12(b)(6) motion to dismiss.

Nevertheless, the Court has considered the *Grand Trunk* factors, and decides to exercise its jurisdiction over Defendants' Counterclaim.  Having exercised jurisdiction, however, the Court finds that the Counterclaim is a mirror-image of Plaintiffs' claim for declaratory relief, serves no useful purpose, and should be dismissed.  Through their affirmative defense, and in opposition to Plaintiffs Amended Complaint, Defendants will be able to raise and fully litigate their argument that the Plan is not a church plan.  Plaintiffs' Motion to Dismiss is hereby **granted**.

III.     **CONCLUSION**

Accordingly, for the reasons set forth herein,

**IT IS ORDERED** as follows:

(1)     Defendants Garren Colvin, Randall Foltz, Nathan Van Laningham, Chris Carle, Glenn Loomis, Daniel Rutterer, and Sarah Giolando's Motion for Judgment on the Pleadings (Doc. # 77) is **granted** as to Counts Two, Three, Four, Six, and Seven, and

**denied** as to Count One and Count Five; and

(2)     Plaintiff's Motion to Dismiss Defendants' Counterclaim (Doc. # 81) is

**granted**.  Defendants' Counterclaim (Doc. # 76) is hereby **dismissed**.

This 4th day of April, 2018.



Signed By:

*David L. Bunning*

United States District Judge

K:\DATA\ORDERS\Cov16\16-49 MOO re cross MTDs.docx